UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSEPH TRENKLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-cv-1207-JES-JEH |
| ) | [Consolidated with 18-cv-1327] |
| KUBOTA CORPORATION, KUBOTA ) | |
| MANUFACTURING OF AMERICA ) | |
| CORPORATION, and KUBOTA ) | |
| INDUSTRIAL EQUIPMENT ) | |
| CORPORATION, ) | |
| ) | |
| Defendants. ) | |

## ORDER AND OPINION

This matter is now before the Court on Defendant's[1] Motion (Doc. 31) for Partial Summary Judgment, Plaintiff's Response (Doc. 37), and Defendant's Reply (Doc. 38). For the reasons set forth below, the Motion (Doc. 31) is denied.

### BACKGROUND

The following facts are undisputed by the parties.[2]

**The Accident**

Plaintiff Joseph Trenkle is a 66-year-old resident of Farmer City, Illinois. Defendant manufactures and distributes the Kubota Model B2650HSD tractor ("the tractor"). Plaintiff was using the tractor at his home on September 10, 2016 until about 4:30 or 5:00 pm. When he attempted to dismount the tractor to open his garage door on his way to put the tractor away for the day, the step on the tractor, which is 12 inches from the ground, broke and Plaintiff's left foot

---

[1] For ease of reference, the Court refers to Defendants in this matter collectively as "Defendant."
[2] The undisputed facts are culled from Defendant's Motion (Doc. 31) and Plaintiff's Response (Doc. 37). The undisputed additional material facts are derived from the Response (Doc. 37) and Reply (Doc. 38).

1

struck the ground, his body rolled to his left, and he landed on the ground on his left arm and shoulder. His right foot was caught in the tractor step, twisting his knee. Plaintiff stood up, remounted the tractor using a step stool, and put it away inside his shed. Doc. 31, at 3.

**The Litigation**

Plaintiff filed two lawsuits against Defendant for strict liability and negligence. Defendant has conceded via a stipulation of the parties that a manufacturing defect caused the detachment of the right step to separate when Plaintiff stepped on it. Proximate cause and damages remain in dispute. Plaintiff alleges the September 10, 2016 fall from the tractor step caused him to undergo meniscus repair surgery on his right knee, a total right knee replacement, a left knee meniscus repair surgery, and a total left knee replacement. *Id*. at 4.

**The Injuries**

On September 30, 2016, Plaintiff was examined by orthopedic surgeon Dr. Anthony Dustman. Plaintiff complained of pain in his right knee that began with a twisting injury on September 10, 2016. Plaintiff did not complain of any left knee pain in September 2016. An x-ray of the right knee revealed "some mild arthritis or moderate arthritis up under the kneecap." The twisting injury did not cause the arthritis in the right knee. An MRI from October 4, 2016 showed a tear of the right knee meniscus. Plaintiff returned to Dr. Dustman on October 6, 2016 and underwent arthroscopic surgery to clean out the torn meniscus. *Id*. at 4.

On November 16, 2016, Plaintiff presented to Dr. Dustman a month after the right knee arthroscopy. Dr. Dustman noted no limp or pain, and concluded "[t]he patient has had a good recovery with no restriction in range of motion or pain." Dr. Dustman testified at his deposition that by November 16, 2016, the goals of the meniscus repair were reached. Plaintiff was under no medical restrictions as of November 16, 2016. On November 28, 2017, Dr. Dustman

performed a total knee replacement on Plaintiff's right knee. According to Dr. Dustman, the September 2016 injury did not cause the right knee arthritis, which could not have developed in the months since the injury. *Id*. at 5. When asked whether the arthritis in Plaintiff's knee was eventually going to need a knee replacement or require Plaintiff to live with the pain, Dr. Dustman testified "Yeah. I think that's a fair—I'm more certain that it would progress down the road than it wouldn't. I mean, again, you're asking me to look in a crystal ball that is pretty hard to see. Pretty foggy there."[3] Doc. 32-9, at 47.

Kubota's orthopedic expert, Dr. Mark Hutchinson, opined that, "[b]ased on imaging and operative findings, to a reasonable degree of medical certainty, Mr. Trenkle had degenerative joint disease including degenerative meniscus pathology that preceded the accident in question and would have progressed regardless of the accident in question." He further opined, "[t]o a reasonable degree of medical certainty, the symptoms and treatment of the RIGHT knee after 16 November 2016, including the need for viscosupplementation and the need for RIGHT total knee arthroplasty were neither caused by the 10 September 2016 fall nor by any exacerbation or aggravation of the pre-existing RIGHT knee pathology that occurred on the date."

Dr. Dustman saw Plaintiff 6 months after the tractor accident, on April 17, 2017, at which time Plaintiff complained of left knee pain associated with slipping and twisting his knee. Dr. Dustman found a torn meniscus in the left knee and performed an arthroscopy in May 2017. Dr. Dustman stated the "mechanism of injury which causes a tear of the cartilage" is consistent with a twisting injury.

> Q. All right. Doctor, do you have an opinion whether the twisting fall from the Kubota tractor step caused in whole or in part the need for the operations on his right and left knee?

---

[3] Because the basis of Plaintiff's dispute regarding this statement of fact is lack of completeness, the Court recites the actual testimony from the transcript and finds the statement undisputed only to the extent it is supported by Dr. Dustman's deposition testimony.

A. I have no clue where that twisting injury occurred. I was not there. I didn't see it. I will tell you with certainty that that twisting injury is a mechanism of injury which causes the tear of the cartilage which caused the necessity to do the operation, yes.

Doc. 32-9, at 26.

Q. Are you able to state to a reasonable degree of medical certainty that the problems with the left knee that you saw and treated Mr. Trenkle for commencing on April 17 of … 2017, would not have happened but for a slipping and falling incident that occurred in September of 2016?
* * *
A. I got no clue what you just asked me. I do like medical reasonable degree because that means I only have to be 50 percent correct, and in my business, I've got to be a hundred percent correct. So I am going to tell you that when I saw him April 17th of 2017, that knee presented with a degenerative tear or a tear of the cartilage, okay? Period. All right? I confirmed it on an MRI, and I scoped him. Now, when all that occurred I don't know, and I'm going to tell you, within a reasonable degree of medical certainty, that, no question, aggravates or progresses the progression of arthritis. Is that the question you were trying to ask me? I'll try to explain medically as best I can for you guys and the jury, but when that occurred I got no clue. I know when I saw him, that's how he presented. The MRI confirmed it. As I mentioned, I like it when I match with it. Scope it. Leave it alone. You're not 20. Now, that usually takes me about a half hour to tell the patient that, but that's it in a nutshell.

*Id*. at 19–20. Finally, Plaintiff's treating physician testified regarding causation as follows:

Q. … Joe Trenkle has and will testify that the only twisting injury that occurred to him was on 9-10-16 when the step of the Kubota tractor failed. Now, if you accept that history, tell the jury your opinion as to the twisting injury and Joe's medical care for his knees; in other words, the relationship between the twisting injury and his knees and his care.
A. Well, there's no question in my mind that that's a direct correlation. The injury to tear the meniscus is twisting, okay? That's by far the most common, all right? That occurs, you then have an MRI that confirms it and a scope that actually shows it. Yes, a direct relationship to that.

Doc. 32-10, at 33–34.

## LEGAL STANDARD

Summary judgment is appropriate where the movant shows, through "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations … admissions, interrogatory answers, or other materials" that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In resolving a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

In order to withstand a motion for summary judgment, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When presented with a motion for summary judgment, the Court must construe the record "in the light most favorable to the nonmovant and avoid[] the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). If the evidence, however, is "merely colorable, or is not significantly probative or merely raises 'some metaphysical doubt as the material facts,' summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50. Thus, in order to overcome the undisputed facts set forth in a defendants' motion for summary judgment, a plaintiff cannot rest on the allegations in his complaint but must point to affidavits, depositions or other evidence of an admissible sort that a genuine dispute of material fact exists between parties. Fed. R. Civ. P. 56(e)(2); *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

## DISCUSSION

In its Motion for Summary Judgment, Kubota argues Plaintiff has failed to establish that Plaintiff's right knee replacement or the injuries to Plaintiff's left knee were caused by the September 10, 2016 fall.

**The Right Knee**

With respect to the right knee, Defendant argues Plaintiff cannot establish that his fall was a cause of his right total knee replacement. Doc. 31 at 11–12. In support of its argument, Defendant refers to Dr. Dustman's deposition testimony and argues that the cause of Plaintiff's right total knee replacement was his preexisting arthritis, and the right total knee replacement would have been required even if Plaintiff had not fallen from the tractor. *Id*. at 11. At his deposition, Dr. Dustman testified as follows:

> Q. And would it be fair to say that the twisting injury did not cause that arthritis that you saw?
> A. Correct, correct. The twisting injury—I want to make sure I have everybody understand this. This injury, okay, contributes to a progression of that, but does it cause it? I'm not sure. I'm not sure we have any data that says it does or doesn't with it, but it certainly contributes to the progression of that arthritis.

Doc. 33-9 at 45. Later, the following exchange occurred:

> Q. Would it be fair to say that the twisting injury did not cause the arthritis that you saw in the knee at the arthroscopy?
> A. Yes.
> Q. Okay.
> A. It takes longer for that [to] develop than a month or two.
> Q. And that arthritis that you saw in the knee was eventually going to need a knee replacement, or live with it like you described earlier as it progressed?
> A. Yeah, I think that's fair—I'm more certain that it would progress down the road than it wouldn't.

Doc. 33-9 at 47. Additionally, Dr. Dustman testified:

> Q. Okay. And is it fair to say as you've testified previously that this arthritis that you saw and these grades would have been there before the injury that occurred on September 10?

6

> A. Yeah. That's just a little too much to come from just that injury. Now, it's also fair to say that that tear didn't help things, and it progressed it. There's no question in my mind that injury and tearing of cartilage … meniscus is an injury, okay … there's no question that progresses it. I don't think its causal.
> Q. Making sure I understand what you just said, you don't think that the twisting of the knee was causal to the arthritis that you saw?
> A. Correct, correct.

Doc. 33-10 at 79–80.

Based on the above, Defendant argues Plaintiff lacks evidence that the right total knee replacement would have occurred absent the fall from the tractor. Doc. 31 at 12. In response, Plaintiff points out that a plaintiff may recover damages for the acceleration of a progressive disease. *Id*. at 11 (citing *Gruidl v. Schell*, 166 Ill. App. 3d 276, 282, 519 N.E.2d 963, 967–68 (1988)). In *Gruidl*, the Illinois appellate court noted that

> [i]t is hornbook law that a tortfeasor is liable for the injuries he or she causes, even though the injuries consist of the aggravation of a pre-existing condition. (*Balestri v. Terminal Freight Cooperative Association* (1979), 76 Ill.2d 451, 455, 31 Ill.Dec. 189, 191, 394 N.E.2d 391, 393.) Further, a plaintiff with a disease may recover damages also for the activation of a dormant disease or the acceleration of a progressive disease. A plaintiff, however, can recover only for that part of his suffering that proximately resulted from the defendant's negligence and was thereby activated, aggravated, or accelerated. (15 Illinois Law & Practice, *Damages,* § 37 (1968).) "A plaintiff is not entitled to recover damages for conditions which are due entirely to a previous disease." 25 C.J.S., *Damages,* § 20, at 657 (1966).

*Gruidl v. Schell*, 166 Ill. App. 3d 276, 282, 519 N.E.2d 963, 967–68 (1988). In reply, Defendant argues (1) that Dr. Dustman does not provide the requisite expert opinion that the fall caused Plaintiff to undergo surgery earlier than he would have absent the fall, and (2) even if he did, Plaintiff's damages would be the same because he would ultimately endure the same pain from surgery and recovery. Doc. 38 at 12–13.

Defendant's argument ignores portions of Dr. Dustman's testimony regarding aggravation of a preexisting condition and fails to account for the pain and suffering Plaintiff experienced

7

from the early progression of his arthritis. First, contrary to Defendant's assertions, Dr. Dustman did testify that the fall resulting in the torn meniscus caused plaintiff's arthritis to progress sooner than it would have without the fall. *See* Doc. 33-10 at 32 ("A. Yeah. That's just a little too much to come from just that injury. Now, it's also fair to say that that tear didn't help things, and it progressed it. There's no question in my mind that injury and tearing of cartilage … meniscus is an injury, okay … there's no question that progresses it."). Second, both the analysis in *Gruidl* and Illinois Pattern Instruction 30.21 support Plaintiff's aggravation of a preexisting condition theory. *See Gruidl*, *supra*; *see also* Ill. Pattern Jury Instr.-Civ. 30.21 ("If you decide for the plaintiff on the question of liability, you may not deny or limit the plaintiff's right to damages resulting from this occurrence because any injury resulted from [an aggravation of a pre-existing condition] [or] [a pre-existing condition which rendered the plaintiff more susceptible to injury]."). For these reasons, Defendant's Motion is denied as it relates to the right total knee replacement.

**The Left Knee**

With respect to the left knee, Defendant argues Plaintiff cannot establish causation with respect to either the left knee meniscus tear or the arthritis in the left knee necessitating a left total knee replacement. Specifically, Defendant argues Plaintiff has failed to establish sufficient evidence of causation because: (1) the records indicate Plaintiff first complained to Dr. Dustman about his left knee in April 2017, months after the September 2016 fall, even though a meniscus tear is usually painful and symptomatic; (2) Dr. Dustman did not offer any opinion that the fall caused the injuries or problems with his left knee; and (3) Dr. Dustman concluded the injury causing the tear in the meniscus was recent when he stated "[s]o obviously he's recently

aggravated it because it's flared up."). Doc. 31 at 13–14. Both parties rely on portions of Dr. Dustman's deposition testimony, so the Court will reproduce those passages here.

> Q. Joe Trenkle has and will testify that the only twisting injury that occurred to him was on 9-10-16 when the step of the Kubota tractor failed. Now, if you accept that history, tell the jury your opinion as to the twisting injury and Joe's medical care for his knees; in other words, the relationship between the twisting injury and his knees and his care.
> A. Well, there's no question in my mind that that's a direct correlation. The injury to tear the meniscus is twisting, okay? That's by far the most common, all right? That occurs, you then have an MRI that confirms it and a scope that actually shows it. Yes, a direction relationship to that.
> Q. And his medical care thereafter?
> A. Yes.
> Q. That's why he needed medical care. That's why he came to you.
> A. Correct, correct.
> [Recross]
> Q. And just to clarify there, Doctor, were you referring to the right knee?
> A. Yes. That's what I interpreted we were talking about.
> ….
> [Redirect]
> Q. Well, what about the left knee, the twisting injury with regard to the left knee, because he reported to you that he twisted his left knee also.
> A. Yes.
> Q. In this same—
> A. I'll agree with the same hypothesis that we had earlier. As I mentioned a couple times, it's mirrored. It's exactly the same thing. It's just on the other side, and there is a direct relationship in my mind between that pathology and the twisting.
> Q. And that's in regard to both the right knee and the left knee?
> A. Correct.

Doc. 33-10 at 33–35.

> Q. All right. Doctor, do you have an opinion whether the twisting fall from the Kubota tractor step caused in whole or in part the need for the operations on his right and left knee?
> [Objection omitted]
> A. I have no clue where that twisting injury occurred. I was not there. I didn't see it. I will tell you with certainty that that twisting injury is a mechanism of injury which causes the tear of the cartilage which caused the necessity to do the operation, yes.
> A. All right. So do you basically—
> [Mr. Larson] Q. Let me clarify which—I apologize for interrupting—which operation are you saying?

> A. Both. Both the right knee and then another twisting, or the same. I don't know when that occurred. I have no clue. Did the very same thing to the left knee.

Doc. 33-9 at 25–26.

> Q. Are you able to state to a reasonable degree of medical certainty that the problems with the left knee that you saw and treated Mr. Trenkle for commencing on April 17 of … 2017, would not have happened but for a slipping and falling incident that occurred in September of 2016?
> …
> A. I got no clue what you just asked me. I do like medical reasonable degree because that means I only have to be 50 percent correct, and in my business, I've got to be a hundred percent correct. So I am going to tell you that when I saw him on April 17th of 2017, that knee presented with a degenerative tear or a tear of the cartilage, okay? Period. All right? I confirmed it on an MRI, and I scoped him. Now, when all that occurred I don't know, and I'm going to tell you, within a reasonable degree of medical certainty, that, no question, aggravates or progresses the progression of arthritis. Is that the question you were trying to ask me? I'll try to explain medically as best I can for you guys and the jury, but when that occurred I got no clue. I Know when I saw him, that's how he presented. The MRI confirmed it.…

Doc. 33-10 at 18–21 (cleaned up).

Defendant first takes issue with the timing of Plaintiff's injury—the medical records show he first reported the issue to Dr. Dustman more than 6 months after the fall from the tractor even though a torn meniscus is usually painful and symptomatic. Doc. 31 at 13. However, Plaintiff testified at his deposition that he noticed pain in both knees immediately after the fall. Doc. 33-4 at 7. Further, Plaintiff testified that the only injury to his left knee occurred on the date of the tractor step failure. Doc. 37-1. While the absence of left knee complaints in the medical records until April 2017 provides a strong line of questioning for Dr. Dustman and Plaintiff on cross examination, it is not a basis for granting summary judgment here. Whether Plaintiff's testimony is credible is a question for the jury.

Next, Defendant argues Dr. Dustman did not offer any opinion that the fall caused the injuries or problems with his left knee. Dr. Dustman was not present at the time of the fall and testified that he did not know when the injury occurred. However, he did testify that, if he relies

10

on Plaintiff's statements that the only twisting injury that occurred to him was on the date of the fall from the tractor, then there is a direct relationship "between that pathology and the twisting." Doc. 33-10 at 35. As a physician, Dr. Dustman reasonably relies upon statements from his patients when arriving at a diagnosis or medical opinion. *See* Fed. R. Evid. 703. Thus, Dr. Dustman was entitled to rely on Plaintiff's statements that the only twisting injury to his knee occurred on the date of the tractor fall when formulating his expert opinion in this case. Defendant's third argument suggests Dr. Dustman concluded the injury causing the tear in the meniscus was recent when he stated "[s]o obviously he's recently aggravated it because it's flared up."). Doc. 31 at 13–14. Yet as Plaintiff points out, that statement is more naturally read to mean a prior, existing injury has recently been aggravated, rather than to describe an entirely new injury. Thus, this statement does not support Defendant's argument. In sum, when Plaintiff's statements and Dr. Dustman's opinions are viewed together, Plaintiff has presented sufficient evidence of causation to survive Defendant's Motion for Summary Judgment as it relates to his left knee meniscus injury.

      Finally, Defendant reiterates the same argument about Plaintiff's left total knee replacement that was made earlier with respect to his right total knee replacement. Dr. Dustman testified that the injuries to the left knee "mirrored" the injuries to the right knee; "it's exactly the same thing." Doc. 33-10 at 35. This argument fails for the same reasons articulated above— Plaintiff has produced sufficient evidence that the meniscus tear aggravated or progressed the arthritis of his left knee, necessitating surgical intervention sooner than he would have absent the fall. Accordingly, Defendant's Motion for Summary Judgment is denied in its entirety.

11

## CONCLUSION

For the reasons set forth above, Defendant's Motion (Doc. 31) for Partial Summary Judgment is DENIED.

Signed on this 22nd day of July, 2021.

s/ James E. Shadid
James E. Shadid
United States District Judge
